UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------
SHOLOM KELLER,

                   Plaintiff,

        v.

APPLIED GENETIC TECHNOLOGIES
CORPORATION, WILLIAM ALISKI, YEHIA
HASHAD, ED HURWITZ, SCOTT KOENIG,
JAMES ROBINSON, JAMES ROSEN, ANNE
VANLENT and SUSAN B. WASHER.

                  Defendants.

Case No. 1:22-cv-09615

**COMPLAINT FOR VIOLATIONS OF
SECTIONS 14(d), 14(e) AND 20(a) OF
THE SECURITIES EXCHANGE ACT
OF 1934**

**JURY TRIAL DEMAND**

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Sholom Keller ("Plaintiff"), by his undersigned attorneys, alleges as follows based (i) upon personal knowledge with respect to himself and his own acts, and (ii) upon information and belief as to all other matters based on the investigation conducted by his attorneys, which included, among other things, a review of relevant U.S. Securities and Exchange Commission ("SEC") filings, and other publicly available information.

## NATURE OF THE ACTION

1.    This action is brought by Plaintiff against Applied Genetic Technologies Corporation ("AGTC" or the "Company") and the members of the Company's board of directors ("Board") for violations of (i) Sections 14(d), 14(e) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78n(d), § 78n(e) and § 78t(a), and (ii) 17 CFR § 240.14d-101. Plaintiff's claims arise in connection with the Board's recommendation that the stockholders of the Company ("AGTC Stockholders") tender their shares to an affiliate of Syncona Limited ("Syncona"), pursuant to a tender offer ("Tender Offer") to acquire all of the issued and

outstanding shares of AGTC for (i) $0.34 in cash per share ("Cash Portion") at closing, and (ii) one contingent value right ("CVR") representing the right to receive additional cash in the future upon the achievement of certain milestones ("Contingent Portion," and together with the Cash Portion, the "Merger Consideration").

2.      On October 23, 2022, AGTC and Syncona announced that they had entered into an agreement ("Merger Agreement") providing for Syncona to purchase all of the outstanding shares of AGTC for the Merger Consideration via the Tender Offer.

3.      On October 26, 2022, Syncona commenced the Tender Offer by filing a Tender Offer Statement on Schedule TO ("TO Statement") with the Securities and Exchange Commission ("SEC"). The TO Statement provides that the Tender Offer expires at 5:00 P.M. Eastern Time on November 28, 2022 ("Expiration Date"), unless extended or earlier terminated in accordance with the Merger Agreement. Upon satisfaction of various conditions described in the TO Statement, and consummation of the Tender Offer, AGTC will survive as a wholly-owned subsidiary of Syncona under Delaware law pursuant to a series of merger transactions ("Merger").

4.      On October 26, 2022, Defendants filed a materially false and misleading Schedule 14D-9 Solicitation/Recommendation Statement ("Recommendation Statement") with the SEC recommending that AGTC Stockholders tender their shares to Syncona pursuant to the Tender Offer. As detailed below, the material misrepresentations and omissions in the Recommendation Statement render it false and misleading in violation of the above-referenced Exchange Act provisions.

5.      It is imperative that such violations are promptly cured to enable AGTC Stockholders to make an informed decision concerning whether to tender their shares to Syncona before the Expiration Date.  Therefore, Plaintiff seeks to enjoin Defendants from closing the

Tender Offer and/or taking any steps to consummate the Merger, until such violations are cured. Alternatively, if the Tender is closed and the Merger is consummated, Plaintiff reserves the right to recover damages suffered by himself and similarly-situated investors as a result of such violations.

<u>**JURISDICTION AND VENUE**</u>

6.     This Court has subject matter jurisdiction over the claims asserted herein for violations of Sections 14(d), 14(e) and 20(a) of the Exchange Act pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.     This Court has personal jurisdiction over each of the Defendants because each defendant has sufficient minimum contacts with the United States so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. *See Moon Joo Yu v. Premiere Power LLC*, No. 14 CIV. 7588 KPF, 2015 WL 4629495, at *5 (S.D.N.Y. Aug. 4, 2015) (because Exchange Act provides for nationwide service of process, and Defendant resides within the United States, and conducts business within the United States, he should reasonably anticipate being haled into court in the United States, and Court's exercise of personal jurisdiction over Defendant with respect to Plaintiffs' securities fraud claim is proper); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 6243526, at *23 (S.D.N.Y. Oct. 20, 2015) ("[w]hen the jurisdictional issue flows from a federal statutory grant that authorizes suit under federal-question jurisdiction and nationwide service of process . . . Second Circuit has consistently held that the minimum-contacts test in such circumstances looks to contacts with the entire United States rather than with the forum state.").

8.     Venue is proper under 28 U.S.C. § 1391(b) because Defendants transact business in this District. In particular, AGTC's common stock trades under the ticker "AGTC" on Nasdaq,

which is headquartered in this District, and the false and misleading Recommendation Statement was filed with the SEC, which has a regional office in this District. *See Mariash v. Morrill*, 496 F.2d 1138, 1144 (2d Cir. 1974) (venue appropriate in the Southern District of New York where an act or transaction constituting the alleged violation occurred in the Southern District of New York); *United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (venue in tender offer fraud prosecution appropriate in District).

## PARTIES

9.      Plaintiff is, and has been at all relevant times, a continuous stockholder of AGTC stock.

10.      Defendant AGTC is a Nevada corporation with its principal executive offices located at 14193 NW 119 Terrace, Suite 10, Alachua, Florida, 32165.

11.      Defendant William Aliski has been a director of the Company since September 2018.

12.      Defendant Yehia Hashad has been a director of the Company since August 2021.

13.      Defendant Ed Hurwitz has been a director of the Company since November 2012.

14.      Defendant Scott Koenig has been a director of the Company since April 2002 and Chairman of the Board since April 2004.

15.      Defendant James A. Robinson has been a director of the Company since December 2021.

16.      Defendant James Rosen has been a director of the Company since March 2010.

17.      Defendant Anne VanLent has been a director of the Company since August 2016.

18.      Defendant Susan B. Washer has been President and Chief Executive Officer of the Company since March 2002, and a director of the Company since November 2003.

19.     Defendants identified in paragraphs 11 to 18 are collectively referred to herein as the "Individual Defendants," and together with AGTC, collectively, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Company Background**

20.     AGTC is a clinical-stage biotechnology company developing genetic therapies for people with rare and debilitating ophthalmic, otologic and central nervous system (CNS) diseases. In particular, AGTC has demonstrated significant progress in a clinical trial of AGTC-501 as a potential treatment for X-Linked Retinitis Pigmentosa (XLRP).

**Background to the Merger With Sycona**

21.     Between late March 2022 and June 2022, the Company, assisted by its financial advisor, MTS Securities LLC ("MTS"), contacted 32 public companies and various private companies that it was believed would have interest in a strategic transaction with AGTC. Of these companies, 16 entered into confidential disclosure agreements ("CDA's"). The Recommendation Statement fails to disclose, however, whether any of these CDA's contained standstill provisions, and if so, under what conditions such provisions would fall away.

22.     From among the 16 companies that executed CDA's with the Company, seven expressed an ongoing interest in further discussions with the Company, including Syncona and Company B, an investment firm that had expressed an interest in financing the Company's manufacturing capabilities, potentially as a spin-out standalone entity or through a merger with an existing viral manufacturing company.

23.     On July 27, 2022, Syncona submitted a non-binding letter of interest to the Company to purchase, via an asset sale, its ocular gene therapy programs, and its manufacturing facility for an upfront payment of $20 million and the assumption of future liabilities under the

Company's manufacturing facility lease. The asset purchase would only include those assets related to the Company'socular programs. All other assets, including the non-manufacturing facility leases and the senior debt facility would remain the responsibility of the Company.

24.     On August 19, 2022, Syncona submitted an updated non-binding indication of interest for a transaction that included acquiring the Company in its entirety subject to identification of a suitable transaction structure. The proposed $57.5 million value of the transaction included $32.5 million at closing, with the remainder in the form of contingent value right to 50% of proceeds greater than $15 million (subject to diligence) from licensing deals on any non-XLRP programs, in the 12 months from closing, capped at $12.5 million and with any transaction being at Syncona's sole discretion. The proposal also included a CVR of $12.5 million upon FDA approval of the Company's XLRP product candidate, AGTC-501.

25.     On September 5, 2022, the Company received an updated proposal from Syncona for a tender offer which included $32.5 million in cash as an upfront payment, plus a CVR entitling the holder to: (i) 60% of the cash proceeds in excess of $5 million received in the 18 months from the closing on licensing deals on any non-XLRP programs, capped at $12.5 million ("Milestone 1"), (ii) $12.5 million in cash upon FDA marketing approval of AGTC-501 ("Milestone 2"), (iii) $12.5 million in cash if FDA approval of AGTC-501 is the first FDA marketing approval of an AAV gene therapy product expressing the RPGR protein ("Milestone 3"), and (iv) $12.5 million in cash in the first year in which there are $100 million in global net sales of AGTC-501 ("Milestone 4," and together with Milestones 1, 2 and 3, the "Milestones"). The Recommendation Statement states that the maximum aggregate cash payment per CVR would be approximately $0.73 per share, if all of the Milestones are achieved.

26.     Syncona and the Company subsequently agreed to reduce the $32.5 million upfront

cash payment by $9.5 million to account for liability associated with put rights in the Company's warrants issued in 2022, resulting in the Cash Portion of the Merger Consideration decreasing to $0.34 per share.

27.     On October 23, 2022, MTS rendered its opinion ("Fairness Opinion") to the Board that the Merger Consideration was fair, from a financial point of view, to AGTC Stockholders. Thereafter, the Board unanimously adopted the Merger Agreement, declared the Merger in the best interests of the Company and its stockholders, and resolved to recommend that AGTC Stockholders tender their shares in the Tender Offer.

28.     Subsequently, the Company and Syncona issued press releases announcing the Merger.

**Discussions With Company B**

29.     The Recommendation Statement discloses that, on October 3, 2022, Company B submitted a proposal ("Company B Proposal") that proposed the acquisition of all the Company's process development and GMP manufacturing assets and staff by one of Company B's portfolio companies. The key terms included a $5.73 million payment to the Company along with a 1.9% equity position in the acquiring company. In addition, the Company B Proposal called for the Company to enter a $2.5 million take-or-pay contract for manufacturing or process development services for a period of two years.

30.     The Recommendation Statement also discloses that, on October 6, 2022, the Company had further discussions with Company B to clarify the Company B Proposal and to discuss increasing the value to reflect the additional process development capabilities and fixed assets that would potentially be included in the transaction. The Recommendation Statement, however, fails to disclose (i) the implied value of the Company B Proposal to AGTC Stockholders

to enable a comparison to the Merger Consideration, (ii) whether the Company had any further discussions with Company B regarding the Company B Proposal after October 6, 2022, and (iii) whether Company B was constrained from making a competing bid for the Company after the Merger was announced by any provisions in its prior agreements with the Company.

**Different and Additional Interests of AGTC Directors and Officers**

31.     The Recommendation Statement cautions that in "considering the recommendation of the Board to tender Shares in the Offer, holders of Shares should be aware that the Company's executive officers, members of the Board and affiliates may be considered to have interests in the execution and delivery of the Merger Agreement and the Transactions, including the Offer and the Merger, ***that may be different from or in addition to***, the interests of holders of Shares generally."

32.     In particular, certain directors and officers own significant amounts of otherwise illiquid options, which will accelerate and be automatically converted into the right to receive the Merger Consideration upon consummation of the Merger. Additionally, employment agreements with certain AGTC executives entitle such executives to significant amounts of money in the event of their termination following consummation of the Merger. These 'golden parachute' packages are significant.

**The Recommendation Statement Contains Material Omissions That
Render Statements Therein Misleading**

33.     Defendants disseminated a false and misleading Recommendation Statement to AGTC Stockholders that misrepresents or omits material information that is necessary for AGTC Stockholders to make an informed decision concerning whether to tender their shares to Syncona pursuant to the Tender Offer.

***Material Nondisclosures Concerning the Confidentiality Disclosure Agreements (CDAs)***

34.     As noted, the Recommendation Statement discloses that 16 companies entered into confidential disclosure agreements ("CDA's") with the Company. The Recommendation Statement fails to disclose, however, whether any of these CDA's contained standstill provisions, and if so, under what conditions such provisions would fall away. The failure to disclose the existence of such provisions and their terms is a material omission that renders statements in the Recommendation Statement misleading because AGTC Stockholders could reasonably conclude from the Recommendation Statement that other bidders were free to submit competing proposals after the announcement of the Merger (when, in fact, they were prevented from doing so by standstill provisions).

***Material Nondisclosures Concerning Post-Merger Employment***

35.     Information that sheds light on the financial incentives and motivations of key members of management who are involved in negotiating the deal is material. Discussions between a buyer and negotiators on the seller side concerning post-Merger employment before a deal closes are unquestionably material since post-Merger compensation represents an economic motivation that could lead a negotiator to favor a deal at a less than optimal price. Here, the Recommendation Statement discloses:

> It is possible that Continuing Employees, ***including the executive officers***, will enter into new compensation arrangements with Parent or its affiliates. As of the date of this Schedule 14D-9, ***no post-closing compensation arrangements were negotiated between any Continuing Employees, including the executive officers, and Parent***. It is anticipated that any discussions regarding specific roles or opportunities will be deferred until closer to the anticipated timing for closing of the Merger.

36.     There is a meaningful distinction between negotiation of "post-closing employment arrangements" and *any* discussions concerning the prospect of post-Merger employment. Here, the

Recommendation Statement only confirms that no "post-closing employment arrangements" have been negotiated. It does not confirm that there were *no* discussions between AGTC management and Syncona concerning post-Merger employment during negotiation of the material terms of the Merger Agreement. To the contrary, the statement above suggests such discussions might have occurred.

37.     In particular, Defendant Washer played an active role in negotiating the Merger with representatives of Syncona. Therefore, any discussions between Defendant Washer and Syncona concerning post-Merger employment must be disclosed since such discussions would have created a potential conflict of interest that could have motivated Washer to prioritize her own personal interests over the interests of AGTC Stockholders in securing an optimal sales price.

***Material Nondisclosures Concerning Company B***

38.     In the context of a proposed corporate transaction, information concerning discussions with competing bidders is material to shareholders and must be disclosed. Here, the Recommendation Statement discloses that, on October 6, 2022, the Company had further discussions with Company B to clarify the Company B Proposal. The Recommendation Statement, however, fails to disclose (i) the implied value of the Company B Proposal to AGTC Stockholders to enable a comparison to the Merger Consideration, (ii) whether the Company had any further discussions with Company B regarding the Company B Proposal after October 6, 2022, and (iii) whether Company B was constrained from making a competing bid for the Company after the Merger was announced by any provisions in its prior agreements with the Company. Such nondisclosures render statements in the Recommendation Statement regarding Company B misleading.

10

***Material Nondisclosures Concerning Any Potential Conflicts Between MTS and
Certain Sycona Entities***

39.     Because of the central role played by financial advisors in the evaluation and
negotiation of a corporation transaction, full disclosure of potential (not just actual) conflicts of
interest of a financial advisor is required. Here, the Recommendation Statement discloses that MTS
and its affiliates "have not had a material relationship with, or otherwise received fees from, "***the
Company or Parent or <u>any other parties to the Merger Agreement or the CVR Agreement</u> during
the two years preceding the date of the MTS [Fairness] Opinion***." But the following entities—
Syncona Portfolio Limited, Syncona Holdings Limited, Syncona Limited, Syncona Investment
Management Limited, and Syncona Holdings (collectively, the "Syncona Parent Entities")—are
not parties to either the Merger Agreement or the CVR Agreement, and thus the Recommendation
Statement fails to address whether MTS had a material relationship, or otherwise received fees
from any of the Syncona Parent Entities in the two years preceding the date of the Fairness
Opinion. Since the Syncona Parent Entities own the entities formed to effectuate the Merger and
the Tender Offer, and one of the Syncona Parent Entities is funding the Merger Consideration, any
potential conflicts between MTS and the Syncona Parent Entities would be material.

***Material Nondisclosures Concerning the MTS Fairness Opinion***

40.     A financial advisor's fairness opinion is one of the most important process-based
underpinnings of a board's recommendation of a transaction to its stockholders. In particular, when
a financial advisor's endorsement of the fairness of a transaction is touted to stockholders, not just
the analyses used by that advisor to arrive at the fairness opinion, but also the key inputs and
assumptions used in those analyses must be fairly disclosed.

41.     Here, the Recommendation Statement discloses that as part of its analysis in
connection the Fairness Opinion, MTS calculated a present value of $0.49 per share for the Merger

Consideration by using a discount rate of 22% and assigning each of the Milestones comprising

the CVR a probability of occurring:

> MTS calculated a net present value of the Offer Price of $0.34 per Share, plus the
> one (1) CVR to be received under the Merger Agreement ***equal to $0.49 per Share***
> (which we refer to as the "Offer Price NPV," which was calculated by adding (i)
> the $0.34 per Share in upfront cash consideration, plus (ii) $0.00 per Share for
> Milestone 1, based on a ***0.0% probability of success*** based on the Projections and
> assuming a discount rate of 22.0% based on the Company's estimated weighted
> average cost of capital as described below, plus (iii) $0.07 per Share for Milestone
> 2, based on a ***60.0% probability of success*** as estimated by the Company
> management in the Projections and assuming a discount rate of 22.0% based on the
> Company's estimated weighted average cost of capital as described below plus (iv)
> $0.05 per Share for Milestone 3, based on a ***45.0% probability of success*** as
> estimated by the Company management in the Projections and assuming a discount
> rate of 22.0% based on the Company's estimated weighted average cost of capital
> as described below plus (v) $0.04 per Share for Milestone 4, ***based on a 60.0%***
> ***probability of success*** as estimated by the Company management in the Projections
> and assuming a discount rate of 22.0% based on the Company's estimated weighted
> average cost of capital as described below.[1]

42.     The Recommendation Statement fails to adequately disclose, however, how MTS

determined the probabilities in the above description of the calculation of Offer Price NPV. The

Recommendation Statement makes reference to an assumption "that achievement of the conditions

for each Milestone Payment will occur as and to the extent contemplated by the Projections," but

the "Projections" table contained in the Recommendation Statement does not assign probabilities

to the Milestones but to estimated sales. Further, MTS assigned a 0% probability to Milestone 1,

which indicates that Milestone 1 has zero value. Yet, the Recommendation Statement identifies

Milestone 1 as a component of the value of the CVR.

43.     Further, the Recommendation Statement fails to adequately disclose how MTS

determined that a discount rate range of 22.0% was appropriate. The Recommendation Statement

---

[1] There is an error in the calculations in the paragraph quoted in the text, i.e., $0.34 + $0.07 +
$0.05 + $0.04 = $0.50 per share, *not* $0.49 per share.

explains that MTS derived a weighted average cost of capital of 22.0% for the Company based on MTS' analysis from publicly available information of the cost of capital for certain publicly-traded gene therapy companies. The Recommendation Statement lists seven such companies but fails to provide any information concerning such companies, including their current market capitalizations and their individual cost of capital. The Recommendation Statement also fails to disclose whether the cost of capital of each of the seven companies listed was equally weighted in the analysis.

44.     If the discount rate used by MTS was artificially high, it would have depressed the present values assigned to the Milestones. *See In re Topps Co. S'holders Litig*., 926 A.2d 58, 76 (Del. Ch. 2007) (raising discount rates drives down the resulting value range). As such, AGTC Stockholders are entitled to further disclosure concerning how MTS calculated the discount rate used. *See Topps*, 926 A.2d at 76 (subjective judgments regarding discount rates are not scientific, "but highly-paid valuation advisors should be able to rationally explain them.").

45.     Finally, the Recommendation Statement discloses that as part of the Fairness Opinion, MTS calculated a Liquidation Value Estimate based on assumed aggregate available cash of $2.55 million that would be available for distribution to AGTC Stockholders if the liquidation were to be completed by November 30, 2022. The Recommendation Statement, however, fails to provide any details concerning how the $2.55 million liquidation proceeds estimate was derived other than to state that it was based on information provided by the Company to MTS. No such information is disclosed.

## CLAIMS FOR RELIEF

## COUNT I

### Against All Defendants for Violations of Section 14(e) of the Exchange Act

46.     Plaintiff incorporates and repeats each and every allegation above as if fully set forth herein.

47.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. § 78n(e).

48.     Defendants disseminated the Recommendation Statement to AGTC Stockholders recommending that AGTC Stockholders tender their shares to Syncona in connection with the Tender Offer.

49.     By virtue of their positions within the Company, and/or roles in the process of preparing, reviewing, and/or disseminating the Recommendation Statement, Defendants were aware of their duty not to make false and misleading statements in the Recommendation Statement, and not to omit material facts from the Recommendation Statement necessary to make statements made therein— in light of the circumstances under which they were made—not misleading.

50.     Yet, as specified above, in violation of Section 14(e) of the Exchange Act, Defendants knowingly or recklessly (i) made untrue statements of material fact in the Recommendation Statement, and (ii) omitted material facts from the Recommendation Statement necessary to make statements therein—in light of the circumstances under which they were

14

made—not misleading, in order to induce AGTC Stockholders to tender their shares in the Tender Offer, and thereby maximize their own personal gain by converting their illiquid AGTC equity holdings into cash through the immediate sale of all of their AGTC shares for cash, and the immediate conversion of their AGTC equity awards into cash (as detailed in the section of the Recommendation Statement entitled "Arrangements Between the Company and its Executive Officers, Directors and Affiliates").

51. The material misrepresentations and omissions in the Recommendation Statement specified above are material insofar as there is a substantial likelihood that a reasonable AGTC Stockholder would consider them important in deciding whether to tender their shares. In addition, a reasonable AGTC Stockholder would view disclosures of the omitted facts specified above as significantly altering the "total mix" of information made available to AGTC Stockholders.

52. Because of the material misrepresentations and omissions in the Recommendation Statement specified above, Plaintiff and other AGTC Stockholders are threatened with irreparable harm insofar as Plaintiff and other AGTC Stockholders will be deprived of their entitlement to make a fully informed decision as to whether to tender their shares in connection with the Tender Offer if such material misrepresentations and omissions are not corrected prior to the Expiration Date. Therefore, injunctive relief is appropriate.

## COUNT II

### Against All Defendants for Violations of Section 14(d) of the Exchange Act and 17 CFR § 240.14d-101

53. Plaintiff incorporates and repeats each and every allegation above as if fully set forth herein.

54. Section 14(d)(4) of the Exchange Act provides that it is unlawful "[a]ny solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or

invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78n(d)(4).

55.     17 CFR § 240.14d-101 (addressing the contents of a Schedule 14D-9 recommendation statement) provides that Item 8 of a recommendation statement shall "[f]urnish the information required by Item 1011(b) **and (c)** of Regulation M-A (§ 229.1011 of this chapter).

56.     17 CFR § 229.1011(c) provides for the furnishing of "additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

57.     As set forth above, Defendants knowingly or recklessly omitted material facts from the Recommendation Statement necessary to make statements therein—in light of the circumstances under which they were made—not misleading, in order to induce AGTC Stockholders to tender their shares in the Tender Offer, and thereby maximize their own personal gain. Accordingly, Defendants have violated Section 14(d)(4) of the Exchange Act and 17 CFR § 240.14d-101.

<u>**COUNT III**</u>

**Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

58.     Plaintiff incorporates and repeats each and every allegation above as if fully set forth herein.

59.     The Individual Defendants acted as controlling persons of AGTC within the meaning of Section 20(a) of the Exchange Act, as alleged herein.  By virtue of their positions as officers and/or directors of AGTC, and participation in, and/or awareness of AGTC's operations, and/or intimate knowledge of the contents of the Recommendation Statement filed with the SEC,

they had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of AGTC with respect to the Recommendation Statement, including the content and dissemination of the various statements in the Recommendation Statement that Plaintiff contends are materially false and misleading, and the omission of material facts specified above.

60.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. In particular, Defendant Washer personally signed the Recommendation Statement.

61.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of AGTC, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised same. In particular, the Recommendation Statement at issue references the unanimous recommendation of the Board to approve the Merger, and recommend that AGTC Stockholders tender their shares pursuant to the Tender Offer. The Individual Defendants were thus directly involved in the making of the Recommendation Statement.

62.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger.  The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered in connection with such negotiation, review and approval. The Individual Defendants thus directly participated in the drafting of the Recommendation Statement.

17

63.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and Section 14(e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

65.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict, and can Plaintiff and other AGTC Stockholders make an informed decision about whether to tender their shares pursuant to the Tender Offer.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, employees and all other agents and persons acting in concert with them from proceeding with, consummating, or closing the Merger, unless and until Defendants disclose and disseminate to AGTC Stockholders the material information specified above that has been omitted from the Recommendation Statement, and correct any false and misleading statements in the Recommendation Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the transactions contemplated thereby, or granting Plaintiff rescissory damages.

C.     Directing Defendant to account to Plaintiff for all damages suffered as a result of their misconduct.

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees and expenses; and

E.      Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: November 10, 2022                    **WOHL & FRUCHTER LLP**

By: */s Joshua E.  Fruchter*
Joshua E. Fruchter (JF2970)
25 Robert Pitt Drive, Suite 209G
Monsey, NY 10952
Tel: (845) 290-6818
Fax: (718) 504-3773
Email: jfruchter@wohlfruchter.com
*Attorneys for Plaintiff*

19